UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
KENYON CHAPMAN,

                *Plaintiff*,

-against-

NEW YORK UNIVERSITY,

                *Defendants*.
-------------------------------------------------------------------X

Docket No.:

**COMPLAINT**

**JURY TRIAL DEMAND**

Plaintiff, KENYON CHAPMAN ("Plaintiff" or "Mr. Chapman"), by and through his attorneys, Ballon Stoll P.C., complaining of Defendant, NEW YORK UNIVERSITY ("Defendant" or "NYU"), alleges with personal knowledge, unless where upon information and belief is stated, the following:

## INTRODUCTION

1. This action seeks to remedy Defendant's intentional and unlawful discrimination based on Plaintiff's religion in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000 *et seq*. ("Title VII"), the Executive Law of the State of New York, New York State Human Rights Law ("Executive Law") § 296, *et seq*., and the Administrative Code of the City of New York, New York City Human Rights Law ("Administrative Code"), § 8-101, *et seq*. and Section 510.

## JURISDICTION AND VENUE

2. This court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §1331 and 42 U.S.C. §§ 2000-e5(f)(1), and 5(f)(3).

3. This Court has supplemental jurisdiction over the State and City law claims pursuant to 28 U.S.C. § 1367.

1

4. As the Southern District is the district where a substantial part of the events giving rise to the claims occurred, venue is proper within this district pursuant to 28 U.S.C. § 1391 (b)(2).

5. Plaintiff filed a timely Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") against Defendant on March 29, 2023, in which he alleged, *inter alia*, that Defendant discriminated against Plaintiff on the basis of his religion and discriminatorily denied hime a reasonable religious accommodation. Plaintiff further alleged that Defendant retaliated against him for taking leave pursuant to the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2611 *et seq.*, and New York State Paid Family Leave ("NYPFL"), N.Y. Comp. Codes R. & Regs. tit. 12, § 380-1.1.

6. On October 24, 2024, the EEOC issued a notice-of-right-to-sue letter.

## PARTIES

*Plaintiff*

7. Plaintiff resides in Brooklyn, County of Kings, State of New York.

8. At all relevant times, and currently, Plaintiff has been a devout member of the Christian religion.

9. Plaintiff is a "person" within the meaning of Title VII.

10. At all relevant times herein, Plaintiff was an "employee" of Defendant within the meaning of Title VII.

*Defendant*

11. Defendant is a private university located in New York, New York.

12. At all relevant times, Defendant employed Plaintiff.

13. At all relevant times, Defendant had more than 500 employees.

14. At all relevant times, Defendant was an "employer" within the meaning of Title VII, FMLA, New York State Executive Law §292(5), and the New York City Administrative Code §8-107(5).

## JURY DEMAND

15. Plaintiff hereby demands a trial by jury in this action.

## FACTS

16. Plaintiff was employed by Defendant from November 25, 2003 until August 25, 2022, when Defendant discharged him from employment.

17. Mr. Chapman has worked as a Resources Manager for Defendant ever since Defendant underwent reorganization in August of 2009.

18. Mr. Chapman managed Defendant's residence halls where his duties included maintaining the day-to-day operations, supervising student workers, and ensuring that students received their packages.

19. Mr. Chapman's direct supervisor was William McGrath, Residence Hall Director.

20. In or about March of 2020, Mr. Chapman was informed that he would be working remotely due to the COVID-19 pandemic.

21. In August of 2020, Mr. Chapman was informed by Defendant that all employees had to return to in-person work and go through on-site weekly testing for COVID-19.

22. On June 22, 2021, Mr. Chapman received a general email that was sent to all employees instructing them to get a mandatory COVID-19 vaccination shot.

23. The letter also informed employees that they can apply for an exemption.

3

24. In July of 2021, Mr. Chapman submitted a request for a religious exemption, via a fourteen-page questionnaire. to the NYU Office of Human Resources.

25. On July 23, 2021, Mr. Chapman submitted an addendum to his application for religious exemption that stated, "I believe [m]an does not have agency over my body. However, my God does. 'Do not be afraid of those who kill the body but cannot kill the soul. Rather, be afraid of the One who can destroy both soul and body in hell' - Matthew 10:28."

26. On August 5, 2021, in an email to Defendant's Office of Equal Opportunity ("OEO"), Complainant further clarified his reason for the religious exemption request, stating "As a Christian, and a believer in Jesus Christ, my personal Savior I am told to Trust in the Lord with all thine heart. I also believe that my body is the Temple of The Holy Spirit and I'm not obliged to take any vaccine that may harm my body."

27. Mr. Chapman's request was granted on August 5, 2021.

28. The Defendant's exemption approval letter informed Mr. Chapman that the exemption is valid for one year or until the FDA fully approves one or more vaccines, whichever comes first.

29. On August 27, 2021, Mr. Chapman received an email from the NYU Associate Director for OEO Accommodations, Kelle Colyer-Brown.

30. Ms. Colyer-Brown informed Mr. Chapman that as of August 23, 2021, the Pfizer vaccine was given full authorization, and Mr. Chapman was required to receive the vaccine within six (6) weeks.

31. Thus, "full approval" had not yet been granted for any vaccine and, therefore, the condition required to trigger the end of Complainant's temporary COVID-19 vaccination exemption was not yet met.

32. Mr. Chapman responded to Defendant's email, informing Ms. Colyer-Brown, that he had a religious exemption from his previous correspondence with the Office of Human Resources, which had informed Mr. Chapman that the vaccine had to get a full approval from the FDA, not an authorization.

33. Mr. Chapman further stated that his exemption should have been a full exemption, not a conditional exemption.

34. Mr. Chapman informed Defendant that he would not comply with the vaccine requirement within six (6) weeks.

35. On November 1, 2021, Complainant received another email from OEO, which stated in relevant part, "My email of August 27, 2021 is consistent with these terms and conditions [of the exemption granted to Complainant], and reflects [sic] provides you with 6 weeks to comply with the University's vaccine requirement subsequent to FDA's authorization of the Pfizer vaccine. You were advised to furnish proof of the vaccination no later than October 8, 2021. The OEO has not granted continuance of exemption beyond that date, and you do not have an exemption from the University at this time."

36. On November 2, 2021, Complainant received an email from OEO stating that they had extended his deadline to receive the vaccine to "two weeks prior to December 8, 2021 [November 24, 2021]."

37. The email continued, "Effective December 8, 2021, all non-compliant employees . . . shall no longer be permitted to enter NYU's campus or buildings. . . . [E]ffective January 1, 2022, all non-compliant employees — regardless of whether they are approved to work remotely — shall be required to take an unpaid leave of absence."

38. In early December of 2021, Mr. Chapman applied for FMLA leave to care for his mother who was discharged from the hospital after she suffered and was treated for a stroke.

39. Mr. Chapman's FMLA request was approved from December 21, 2021, to March 16, 2022.

40. On March 14, 2022, Mr. Chapman received an email from OEO Human Resources Business Partner Shanelle Smith, who copied his immediate supervisor, William McGrath, informing Mr. Chapman that he was not permitted to access the campus and not allowed to remain on paid leave until he complied with the vaccination policy.

41. Mr. Chapman responded to Defendant's email, informing Ms. Smith that he would not comply with the vaccination mandate and that he would need to return to Defendant's campus on March 16, 2022, since his FMLA period was scheduled to end on that day.

42. Specifically, Mr. Chapman's response stated, "Once again I will not be complying with any unlawful vaccine mandate. . . . I do want you to know I did reply to the email you sent me on December 21st and I didn't hear back from you until today, two days before my planned return. It can be perceived that the University took job action against me while I was on family leave. I don't know why the inevitable is being delayed? If the institution feels I'm a liability because of my covid-19 vaccination status . . . why not just terminate me? After all, I was given a religious exemption that was reneged upon."

43. Mr. Chapman also requested that NYU provide him with permission to work remotely on official letterhead, since based on the letter Mr. Chapman received, he was not being terminated but was being denied access to campus. Mr. Chapman never received such letter.

44. Mr. Chapman returned to work on March 16, 2022, at which time he was cleared for work through on-site weekly testing.

6

45. That same day, Mr. Chapman worked a full day and by the end of business day, he received a letter from an area director informing him that he was an unauthorized presence on NYU campus and must leave the campus immediately.

46. From March 17, 2022, to August 25, 2022, Defendant placed Mr. Chapman on unpaid leave for his refusal to receive the vaccine.

47. On March 31, 2022, Mr. Chapman submitted another religious exemption request to OEO, stating as follows: "I am writing this request for an exemption to the Covid-19 requirement based on my religious belief. As a Christian of Pentecostal denomination, I believe that my body is the temple of the Holy Ghost which dwelleth in me. I believe that my body belongs to God and doesn't belong to man, and I should be mindful to what I put inside my body. 'Do you not know that your body is a temple of the Holy Spirit, who is in you, whom you have received from God? You are not your own. That God is in you. That he is our healer.' -Corinthians 6:19. My faith also instructs me to trust in the Lord with all thine heart. As a man of faith, I refrain from contaminating my temple (body) with things that can be impure. Things that I believe are impure is any man-made remedy including vaccines that may cause harm to the body. I do not consume anything that can have potential harm to my body. As a Christian, I believe that my spirit is eternal and the body that I dwell in is temporary/fixed. I am not against immunization in its traditional sense. However, the vaccine I am being mandated to take isn't a vaccine in the traditional sense. The vaccine is that is administered is an experimental mRNA that is genuinely against the beliefs I have already expressed. '*The Lord is my strength and my shield; my heart trusted in him, and I am helped: therefore my heart greatly rejoiceth; and with my song will I praise him*.' – Psalm 28:7. Faith is what guides me, and I humbly request that I am considered for exemption from the covid-19 requirement based on my faith. In the Holy Bible, in the book of Hebrews the concept

7

of faith is described as, '*the substance of things hoped for, the evidence of things not seen, but without Faith it is impossible to please Him: for he that cometh to God must believe that He is, and that He is a rewarder of them that diligently seek Him.*'"

48. On June 22, 2022, Mr. Chapman emailed Defendant's Office of Human Resources, copying William McGrath, Kate Baier and Kevin Conn, informing them of Defendant's denial of his access to campus and pointing out that his vaccination exemption was conditional on a vaccine being fully approved, not fully authorized.

49. Mr. Chapman also stated that he was being harassed for not getting vaccinated despite being approved for an exemption.

50. On August 25, 2022, Mr. Chapman received an official letter of termination, allegedly for failing to comply with the NYU COVID-19 vaccination requirement.

51. Mr. Chapman could have been accommodated without causing Defendant an undue burden given the availability of non-vaccine safety procedures that had been deemed acceptable and effectively applied prior to the vaccine mandate and the vaccines' demonstrated ineffectiveness in actually preventing the spread of the COVID-19 virus.

52. It would not have caused an undue hardship to allow Plaintiff to continue to follow prior or similar precautions – including but not limited to remote work arrangements or regular testing – in lieu of the mandatory COVID-19 vaccination policy.

53. Upon information and belief, Defendant granted exemptions to the mandatory COVID-19 vaccination policy. Since other employees were granted exemptions, it would not have caused an undue hardship to grant Plaintiff an exemption.

54. The Centers for Disease Control and Prevention ("CDC") has acknowledged that vaccinations or injections available for COVID-19 did not prevent transmission, infection, or reinfection in those who receive them.

55. The CDC Director publicly stated that the injections do not prevent infection or transmission of SARS-CoV-2, which is the virus that has been identified by various public health agencies as causing the disease known as COVID-19.

56. The CDC acknowledged that the "vaccinated" and "unvaccinated" were equally likely to spread the virus.

57. Moreover, New York State, in its aggressive efforts designed to curb the spread of COVID-19 throughout the state, nevertheless provided employees such as public school staff/employees the option of either getting vaccinated or, alternatively, getting tested weekly.

58. Furthermore, the CDC had already reported extensively on how the relative risk of hospitalization and death due to COVID-19 was significantly greater among persons in the seventy-five (75) to eighty-four (84) and eighty-five plus (85+) age groups. In other words, the persons at greatest risk of becoming seriously ill or dying from COVID-19 were the least likely to be encountered by Plaintiff in his workplace.

59. It may be inferred that Defendant's refusal to grant Plaintiff any kind of religious exemption despite Plaintiff's demonstrating his sincere religious beliefs that he was religiously prohibited from injecting vaccines into his body and given, *inter alia*, the availability of non-vaccine safety procedures that had been deemed acceptable and effectively applied prior to the vaccine mandate, the COVID-19 virus's minimal danger in Plaintiff's work environment, and the vaccines' demonstrated ineffectiveness in actually preventing the spread of the COVID-19 virus—

9

constituted discrimination against Plaintiff on the basis of his religion and/or retaliation for his use of FMLA.

60. This entire experience has caused Plaintiff significant mental and emotional distress and financial hardship.

## **FIRST CAUSE OF ACTION**
### **Discrimination Based Upon Religion in Violation of Title VII**

61. Plaintiff hereby repeats, re-alleges, and incorporates each and every allegation contained in the above paragraphs of this Complaint as though fully set forth in this paragraph of the Complaint.

62. At all relevant times, Defendant was an "employer" within the meaning of Title VII of Title VII.

63. At all relevant times, Plaintiff was a "person" and "employee" within the meaning of Title VII.

64. The discriminatory actions of Defendant were invidious and repugnant.

65. Defendant discriminated against Plaintiff on the basis of his religion (Christian) in violation of Title VII by denying his request for a reasonable religious exemption to the mandatory COVID-19 vaccination policy and terminating his employment,

66. As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of Title VII, Plaintiff has suffered and continues to suffer monetary and/or economic harm, including, but not limited to, loss of income, for which he is entitled to an award of monetary damages and other relief, including, but not limited to, lost earnings, attorneys' fees, and expenses.

67. As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of Title VII, Plaintiff has suffered and continues to suffer severe mental anguish, and emotional distress, and loss of quality of life.

68. Defendant's discriminatory actions in violation of Title VII were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's civil rights, for which she is entitled to an award of punitive or exemplary damages.

## SECOND CAUSE OF ACTION
**Discrimination Based Upon Religion in Violation of the Administrative Code**

69. Plaintiff hereby repeats, re-alleges, and incorporates each and every allegation contained in the above paragraphs of this Complaint as though fully set forth in this paragraph of the Complaint.

70. At all relevant times, Defendant was an "employer" within the meaning of the Administrative Code.

71. At all relevant times, Plaintiff was a "person" and "employee" within the meaning of the Administrative Code.

72. The discriminatory actions of Defendant were invidious and repugnant.

73. Defendant discriminated against Plaintiff on the basis of his religion (Christianity) in violation of the Administrative Code by denying his reasonable request for a religious exemption to the mandatory COVID-19 vaccination policy and terminating his employment.

74. As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of the Administrative Code, Plaintiff has suffered and continues to suffer monetary and/or economic harm, including, but not limited to, loss of income, for which he is entitled to an award of monetary damages and other relief, including, but not limited to, lost earnings, lost income from social security wages and pension, attorneys' fees, and expenses.

75. As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of the Administrative Code, Plaintiff has suffered and continues to suffer severe mental anguish, and emotional distress, and loss of quality of life.

76. Defendant's discriminatory actions in violation of the Administrative Code were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's civil rights, for which she is entitled to an award of punitive or exemplary damages.

### THIRD CAUSE OF ACTION
**Discrimination Based Upon Religion in Violation of the Executive Law**

77. Plaintiff hereby repeats, re-alleges, and incorporates each and every allegation contained in the above paragraphs of this Complaint as though fully set forth in this paragraph of the Complaint.

78. At all relevant times, Defendant was an "employer" within the meaning of the Executive Law.

79. At all relevant times, Plaintiff was a "person" and "employee" within the meaning of the Executive Law.

80. The discriminatory actions of Defendant were invidious and repugnant.

81. Defendant discriminated against Plaintiff on the basis of his religion in violation of the Executive Law by denying his reasonable request for a medical exemption to the mandatory COVID-19 vaccination policy.

82. As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of the Executive Law, Plaintiff has suffered and continues to suffer monetary and/or economic harm, including, but not limited to, loss of income, for which he is entitled to an award of monetary damages and other relief, including, but not limited to, lost earnings, lost income from social security wages and pension attorneys' fees, and expenses.

83. As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of the Executive Law, Plaintiff has suffered and continues to suffer severe mental anguish, emotional distress, and loss of quality of life.

84. Defendant's discriminatory actions in violation of the Executive Law were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's civil rights, for which he is entitled to an award of punitive or exemplary damages.

## FOURTH CAUSE OF ACTION
**Refusal to Engage in Cooperative Dialogue in Violation of the Administrative Code**

85. Plaintiff hereby repeats, re-alleges, and incorporates each and every allegation contained in the above paragraphs of this Complaint as though fully set forth in this paragraph of the Complaint.

86. At all relevant times, Defendant City was an "employer" within the meaning of the Administrative Code.

87. At all relevant times, Plaintiff was a "person" and "employee" within the meaning of the Administrative Code.

88. The Defendant was obligated to engage in cooperative dialogue with Plaintiff related to his need for a religious accommodation as a protected member under the Administrative Code even though he was fully capable of continuing his duties with a reasonable accommodation.

89. The aforementioned act of the Defendant constitutes a violation of §8-107(28)(a)(1) of the Administrative Code, which provides *inter alia* that: It shall be an unlawful discriminatory practice for an employer, labor organization, or employment agency or an employee or an agent thereof to refuse or otherwise fail to engage in a cooperative dialogue within a reasonable time with a person who has requested an accommodation or who the covered entity has noticed may

require such an accommodation. (1) For religious needs as provided in subdivision three (3) of this section.

90. As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of the Administrative Code, Plaintiff has suffered and continues to suffer monetary and/or economic harm, including, but not limited to, loss of income, for which she is entitled to an award of monetary damages and other relief, including, but not limited to, lost earnings, lost income from social security wages and pension attorneys' fees, and expenses.

91. As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of the Administrative Code, Plaintiff has suffered and continues to suffer severe mental anguish, and emotional distress, and loss of quality of life.

92. Defendant's discriminatory actions in violation of the Administrative Code were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's civil rights, for which he is entitled to an award of punitive or exemplary damages.

## **FIFTH CAUSE OF ACTION**
**Retaliation in Violation of 29 U.S.C. § 2615(a)(1)**

93. Plaintiff hereby repeats, re-alleges, and incorporates each and every allegation contained in the above paragraphs of this Complaint as though fully set forth in this paragraph of the Complaint.

94. Defendant retaliated against Plaintiff for engaging in protected activity in violation of 29 U.S.C. § 2615(a)(1).

95. As a result of Defendant's retaliatory conduct, Plaintiff has incurred, and will continue to incur damages thereby, but not limited to lost income, lost benefits, and attorneys' fees.

96. At all relevant times, the Defendant acted with malice, intent, knowledge, and reckless indifference to Plaintiff's rights under FMLA.

97. As a result of Defendants' retaliatory conduct, Plaintiff has suffered and will continue to suffer severe mental anguish, emotional distress, and loss of quality of life.

98. Defendant's discriminatory actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's civil rights, for which he is entitled to an award of punitive or exemplary damages.

**WHEREFORE**, Plaintiff prays that judgment be entered against Defendant awarding Plaintiff compensatory and punitive damages for lost income, attorneys' fees, emotional distress, and loss of quality of life.

1. On the First Cause of Action, judgment against Defendant in compensatory and punitive damages, in an exact amount to be determined at trial; and

2. On the Second Cause of Action, judgment against Defendant in compensatory and punitive damages, in an exact amount to be determined at trial; and

3. On the Third Cause of Action, judgment against Defendant in compensatory and punitive damages, in an exact amount to be determined at trial; and

4. On the Fourth Cause of Action, judgment against Defendant in compensatory and punitive damages, in an exact amount to be determined at trial; and

5. On the Fifth Cause of Action, judgment against Defendant in compensatory and punitive damages, in an exact amount to be determined at trial; and

6. That Plaintiff have such other, further, and different relief as the Court deems just, proper, and equitable in the circumstances, together with interest on all Causes of Action, attorney's fees, and costs and disbursements in this action.

Dated: New York, New York
       January 22, 2025

                            BALLON STOLL P.C.

                            By: *s/Marshall Bellovin*
                                Marshall B. Bellovin, Esq. (MB5508)
                                Jillian Tattersall. Esq. (JT1572)
                                *Attorneys for Plaintiff*
                                810 Seventh Avenue, Suite. 405
                                New York, New York, 10019
                                212-575-7900